UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

GARY EMMONS, et ux,                        )
                                           )
          Plaintiffs,                      )
                                           )
     vs.                                   )          Case No. 1:10CV41 JAR
                                           )
BRIDGESTONE AMERICAS TIRE                  )
OPERATIONS, LLC, et al.,                   )
                                           )
          Defendants.                      )

## MEMORANDUM AND ORDER

This matter comes before the Court on The Goodyear Tire & Rubber Company's Motion for

Summary Judgment (ECF No. 153).  This matter is fully briefed and ready for disposition.

## BACKGROUND

On June 18, 2009, Plaintiff Gary Emmons ("Mr. Emmons") was involved in a workplace

accident involving a multi-piece rim and assembly installed on a log-hauling truck used at Emmons

Sawmill in Fairdealing, Missouri.  The rim consists of three metal parts (a rim base, lock ring, and

flange).  As Mr. Emmons was servicing the multi-piece rim, a pressurized separation of the rim

components occurred and he was injured.

Goodyear developed the M-style multi-piece rim in the 1940s, but never obtained any patents

on the M-style multi-piece rim design.  After Goodyear acquired Motor Wheel Corporation ("Motor

Wheel") on January 9, 1964, they designed, manufactured, distributed and sold single-piece and

multi-piece rims, including the component parts of the M-style rims.  (Memorandum in Support of

The Goodyear Tire & Rubber Company's Motion for Summary Judgment ("Memorandum"), ECF

No. 154, p. 8).  On or around December 30, 1986, Goodyear sold Motor Wheel to MWC Holdings,

Inc. ("MWC").  (Statement of Undisputed Material Facts in Support of The Goodyear Tire &

Rubber Company's Motion for Summary Judgment ("SUMF"), ECF No. 155, ¶13).[1]  Due to that sale, Motor Wheel became independent and has not been a subsidiary or corporate affiliate of Goodyear since December 31, 1986. (SUMF, ¶15).  As of approximately March 31, 1987, Goodyear left the business of designing, manufacturing, and marketing multi-piece rims.  (SUMF, ¶16).

The rim at issue in this case was manufactured by The Firestone Tire & Rubber Company ("Firestone").  (SUMF, ¶7).  The manufacturer's identification markings on the lock ring and the flange components indicate Motor Wheel manufactured them on May 7, 1992 and November 11, 1992, respectively.  (SUMF, ¶¶8-9).  That is, the lock ring and flange components were manufactured by Motor Wheel, after Goodyear sold Motor Wheel on or about December 30, 1986 and after Goodyear left the business of manufacturing multi-piece rims on or about March 30, 1987.

Plaintiffs reached a settlement with the defendants responsible for the manufacture and sale of the rim components, *i.e.*, the Firestone Defendants and Hayes Lemmerz International, Inc. ("HLI"), the successor-in-interest to Motor Wheel.  Goodyear is the only defendant remaining in this action.  Plaintiffs maintain claims against Goodyear for strict liability and negligence on behalf of Gary Emmons, as well as a claim for loss of consortium by Plaintiff Deborah Emmons.

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Torgerson v. City

---

[1]Specifically, pursuant to a Purchase Agreement dated December 30, 1986 between Goodyear and MWC, Goodyear sold MWC all of its stock in Motor Wheel; all of the capital stock in Motor Wheel Corporation of Canada, Ltd.; Goodyear's rim manufacturing plant in Akron, Ohio; the plants at Luckey, Ohio and Berea, Kentucky; and the rights, properties and assets owned by Goodyear and used in connection with the business.  (SUMF, ¶14).

of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011).  The substantive law determines which facts are critical and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Only disputes over facts that might affect the outcome will properly preclude summary judgment.  Id.  Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.

A moving party always bears the burden of informing the Court of the basis of its motion.  Celotex Corp., 477 U.S. at 323.  Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute."  Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248.  The nonmoving party may not rest upon mere allegations or denials of its pleading.  Anderson, 477 U.S. at 258.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor.  Celotex Corp., 477 U.S. at 331.  The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"  Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).

## DISCUSSION

## I.   STRICT LIABILITY

"To prevail under a strict liability theory in a defective design case, plaintiffs must prove four elements: (1) the product was sold in the course of the defendant's business; (2) at that time, the product was in a defective condition unreasonably dangerous when put to a reasonably anticipated use; (3) the product was put to use in a reasonably anticipated manner; and (4) the plaintiff was

damaged as a direct result of a defective condition which existed at the time the product was sold."
Bass v. GMC, 150 F.3d 842, 847 (8th Cir. 1998)(citing Pree v. Brunswick Corp., 983 F.2d 863, 865
(8th Cir. 1993); Mulligan v. Truman Med. Ctr., 950 S.W.2d 576, 579 (Mo. Ct. App. 1997); Fahy v.
Dresser Indus., Inc., 740 S.W.2d 635, 637-38 (Mo. 1987) (en banc); Mo. Ann Stat. §§ 537.760 et
seq.); Engel v. Corrigan Co.-Mech. Contrs., Inc., 148 S.W.3d 28, 30 (Mo. Ct. App. 2004).  "Strict
liability was adopted in part 'to insure that the costs of injuries resulting from defective products are
borne by the manufacturers (and sellers) that put such products on the market rather than by the
injured persons who are powerless to protect themselves.'"  Gramex Corp. v. Green Supply, 89
S.W.3d 432, 439 (Mo. 2002)(citing Keener v. Dayton Electric Mfg. Co., 445 S.W.2d 362, 364 (Mo.
1969)).  The purpose of strict liability is "to allow injured consumers or remote parties the ability
to sue suppliers, sellers or manufacturers absent the technical requirements of privity in a contract
action or without the need to prove negligence in a tort action."  Sharp Bros. Contracting Co. v.
American Hoist & Derrick Co., 703 S.W.2d 901, 903 (Mo. 1986); Restatement (Second) of Torts
§402A, cmt. c ("public policy demands that the burden of accidental injuries caused by products
intended for consumption be placed upon those who market them, and be treated as a cost of
production against which liability insurance can be obtained; and that the consumer of such products
is entitled to the maximum of protection at the hands of someone, and the proper persons to afford
it are those who market the products").[2]

Plaintiffs essentially allege that Goodyear is liable based upon a defective wheel design it
put into the marketplace more than a half a century ago.   Plaintiffs also contend that Goodyear

---

[2]"The Court in Keener v. Dayton Electric Manufacturing Co., 445 S.W.2d 362, 364 (Mo.
1969), adopted the rule of strict liability in defective product claims as defined in Restatement
(Second) of Torts § 402A."  Gramex Corp. v. Green Supply, 89 S.W.3d 432, 438 (Mo. 2002).  In
turn, "Section 537.760 codifies sec. 402A of the Restatement (Second) of Torts."  Budding v. SSM
Healthcare Sys., 19 S.W.3d 678, 681 (Mo. 2000)(citing Rodriguez v. Suzuki Motor Co., 996 S.W.2d
47, 65 (Mo. banc 1999)).

should be strictly liable because its design created consumer demand for and reliance upon the product.  (Plaintiffs' Memorandum in Opposition to Defendant Goodyear's Motion for Summary Judgment ("Response"), ECF No. 164, p. 6).  Plaintiffs argue that the parts at issue were manufactured by Motor Wheel based on Goodyear's original design.  (Response, p. 7; Plaintiffs' Statement of Undisputed Material Facts ("PSUMF"), ECF No. 165, ¶2).  The only changes to Goodyear's design were the elongation of a metal tab, a logo change, and moving the warning sticker.  (SUMF, ¶24).  Even though Goodyear admittedly exited the market of this product more than 5 years prior to the production of the M-style rim, Plaintiffs maintain that Goodyear is still liable because it "created the market" for the product at issue and now benefits from selling tires for the M-style rims.  (Id., pp. 8-9).

The Court finds that Goodyear cannot be liable to Plaintiffs because Goodyear did not place the allegedly defective product in the stream of commerce.  See Ford v. GACS, Inc., 265 F.3d 670, 680 (8th Cir. 2001)("The common thread among Missouri products liability cases is that an entity must have placed a defective product in the stream of commerce.")(internal citations and quotations omitted).  The M-style rim design has been in the marketplace for more than a half of a century.  During that entire time, Goodyear never applied for or received any patents on the design, and Goodyear took no means to protect any purported intellectual property interest it may have had in the design.  Thus, the M-style rim design has been part of the public domain virtually since its inception.  Likewise, Goodyear did not sell the design or any other intellectual property rights to MWC as part of its sale of assets when it exited the wheel manufacturing business.  Goodyear cannot be held strictly liable for placing the product into the stream of commerce when it did not manufacture the subject lock ring and flange and when it never held any proprietary interest in the design of said product.

Moreover, Goodyear lacks that "participatory connection" to the production of the M-style rim that injured Mr. Emmons.  Gunderson, 674 S.W.2d at 668.[3]  Simply because a designer or manufacturer previously was engaged in placing a product in the market does not mean that it can be held liable based upon the actions of successors in the industry.  Although no Missouri case addresses whether a predecessor corporation can be held liable for a product manufactured and sold by a successor corporation, Missouri courts have refused to hold companies liable for the actions of their predecessors in interest, absent recognized exceptions which are not present here.  See Tucker v. Paxson Machine Co., 645 F.2d 620, 622 (8th Cir. 1981)(quoting Brockmann v. O'Neill, 565 S.W.2d 796, 798 (Mo. Ct. App.1978)("[W]here one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor, except: (1) where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporation; (3) where the purchasing corporation is merely a continuation of the selling corporation; or (4) where the transaction is entered into fraudulently in order to escape liability for such debts.").[4]  Likewise,

_____

[3]Plaintiffs rely heavily on Gunderson v. Sani-Kem Corp., 674 S.W.2d 665 (Mo. Ct. App. 1984).  In that case, the Court stated that "liability is imposed on all those in the chain of placing a defective product in the stream of commerce[.]" Id. at 668.  The Gunderson court determined that "[u]nder the stream-of-commerce approach to strict liability no precise legal relationship to the member of the enterprise causing the defect to be manufactured or to the member most closely connected with the customer is required before the courts will impose strict liability; it is the defendant's *participatory connection, for his personal profit or other benefit*, with the injury-producing product and *with the enterprise that created consumer demand for and reliance upon the product* which calls for the imposition of strict liability. * * *." Id. (emphasis in original). The Court held that defendant, who was neither the original designer or the manufacturer, modified a lubrication system on a conveyor belt to place the spray nozzle in an unreasonably dangerous position. Id. at 669.  In Gunderson however, the defendant had a participatory connection to the product because of its modification of that particular product, which caused the plaintiff's injury. Such direct participation is not present here.

[4]Here, there is no evidence, other than Plaintiffs unsupported conjecture, that the sale of stock to MWC was done in order to avoid any sort of liability, or that any other exception to a finding of non-liability for actions of another corporation exists.

courts in other jurisdictions have determined that the prior producer of the same product may not be held liable as a matter of law under a product liability theory. Barbour v. Dow Corning Corp., No. X06CV930301054S, 2002 WL 983346, at *2 (Conn. Super. Apr. 19, 2002).  Specifically, the Court in Barbour outlined several other cases finding that 3M (the predecessor) was not liable for products sold by McGhan Medical Corporation (the successor in interest). See Felker v. McGhan Medical Corp., 36 F.Supp.2d 863 (D.Minn.1998); Healy v. McGhan Medical Corp., No. CA975320, 2001 WL 717110 (Mass.Super. Mar. 29, 2001); Christian v. Minnesota Mining & Manufacturing Co., 126 F.Sup.2d 951 (D.M.D.2001); Roberts v. Bioplasty, Inc., No. 93-2967 (E.D.La. February 11, 2000); McCarthy v. McGhan Medical Corp., No. 94 L 7366 (Ill.Cir.Ct. Feb. 27, 1998.); and McConkey v. McGhan Medical Corp., 144 F.Sup.2d 958, 963 (E.D.Tenn.2000).  The Court agrees with these well-reasoned decisions that refuse to extend liability to predecessor corporations.

The Court finds no basis for extending liability to Motor Wheel's predecessor, Goodyear, and Plaintiffs have cited to no cases to support their "predecessor liability" theory.  Plaintiffs fail to prove that Goodyear played a role in the manufacture and/or sale of the M-style rims at issue in this case. Bass, 150 F.3d at 847; Felker, 36 F. Supp. 2d at 872.  Motor Wheel was the manufacturer who made the choice of what design to use.  Felker, 36 F. Supp. 2d at 873.  Although Motor Wheel n/k/a HLI may be held strictly liable for any alleged defects, Goodyear cannot.  Accordingly, Plaintiffs' strict liability claim against Goodyear must be dismissed.

## II.    NEGLIGENCE

To sue for negligence, a plaintiff must show that the defendant owed a duty to the plaintiff, breached that duty, and the breach was the proximate cause of the plaintiff's injuries. Stanley v. City of Independence, 995 S.W.2d 485, 487 (Mo. banc 1999); Ivey v. Nicholson-Mcbride, 336 S.W.3d

155, 157 (Mo. Ct. App. 2011)("Negligence is shown by proof of the following elements: (1) the

existence of a duty to conform to a certain standard of conduct to protect others against unreasonable

risks, (2) breach of the duty, (3) proximate cause, and (4) actual damages.")(quotations omitted).

"Any action for negligence requires the plaintiff to establish that the defendant had a duty to protect

the plaintiff from injury, the defendant failed to perform that duty, and the plaintiff's injury was

proximately caused by the defendant's failure." Jarrett v. Jones, 258 S.W.3d 442, 448 (Mo.

2008)(citing Krause v. U.S. Truck Co., Inc., 787 S.W.2d 708, 710 (Mo. banc 1990)); Autry Morlan

Chevrolet, Cadillac, Inc. v. RJF Agencies, Inc., 332 S.W.3d 184, 194 (Mo. Ct. App. 2010).

"'Duty is unique among the elements of negligence because the existence of duty is a

question of law to be decided by the court.'" Hansen v. Ritter, 375 S.W.3d 201, 208 (Mo. Ct. App.

2012)(quoting Miles ex rel. Miles v. Rich, 347 S.W.3d 477, 483 (Mo. Ct. App. 2011)).

> The question of whether a duty exists "depends upon a calculus of policy
> considerations." Lough v. Rolla Women's Clinic, 866 S.W.2d 851, 854 (Mo. banc
> 1993).  Among other considerations, "[f]oreseeability is the paramount factor in
> determining existence of a duty," but foreseeability alone is not enough to establish
> a duty. Id. There must also be some right or obligation to control the activity that
> presents the danger of injury. See Haney v. Fire Ins. Exchange, 277 S.W.3d 789, 792
> (Mo.App. 2009); Burrell ex rel. Schatz v. O'Reilly Auto., 175 S.W.3d 642, 656
> (Mo.App. 2005); Stitt v. Raytown Sports Ass'n, Inc., 961 S.W.2d 927, 930-31
> (Mo.App. 1998); Burns v. Black & Veatch Architects, Inc., 854 S.W.2d 450, 457
> (Mo.App. 1993); Wilson v. St. Louis Area Council, 845 S.W.2d 568, 570 (Mo.App.
> 1992); Conroy v. City of Ballwin, 723 S.W.2d 476, 478 (Mo.App. 1986).
> Recognition of danger "is certainly not, on its own, a basis for a negligence action."
> Burns, 854 S.W.2d at 457.

Miles v. Rich, 347 S.W.3d 477, 483 (Mo. Ct. App. 2011).  That is, "'[t]he common denominator that

must be present is the existence of a relationship between the plaintiff and defendant that the law

recognizes as the basis of a duty of care.'" Ford v. GACS, Inc., 265 F.3d 670, 681 (8th Cir. Mo.

2001)(quoting Bunker v. Ass'n of Mo. Elec. Coops., 839 S.W.2d 608, 611 (Mo. Ct. App. 1992)).

In making this determination, Missouri courts "refer 'to the body of statutes, rules, principles and

precedents which make up the law.'" <u>Ford</u>, 265 F.3d at 681-82 (quoting <u>Kopoian v. George W. Miller & Co.</u>, 901 S.W.2d 63, 68 (Mo. Ct. App. 1995)). "Where no duty is indicated by Missouri statute, case law, or otherwise, a fundamental prerequisite to establishing negligence is absent." <u>Ford</u>, 265 F.3d at 682 (citing <u>Horstmyer v. Black & Decker, (U.S.), Inc.</u>, 151 F.3d 765, 773 (8th Cir. 1998)).

Plaintiffs contend that a defendant can be held liable for negligence even though it did not manufacture or sell the product at issue. (Response, p. 9).  Plaintiffs assert that Goodyear should be held liable for negligence based upon Goodyear's design of the M-style rim.  (<u>Id.</u>, p. 10).  Plaintiffs maintain that Goodyear owed Mr. Emmons a duty based upon the foreseeability that Motor Wheel would continue to design dangerous rims based upon Goodyear's design.  (<u>Id.</u>, pp. 10-11).  Finally, Plaintiffs state that whether Goodyear is the designer of the subject rim is disputed, which creates a genuine issue of material fact barring summary judgment.  (<u>Id.</u>, p. 11).

The Court finds that Goodyear owed no duty to Plaintiffs.  As previously discussed, Goodyear had exited the M-style rim manufacturing business in 1987.  It did not manufacture any of the products that injured Mr. Emmons.  (Memorandum, p. 13).  Goodyear was not receiving any compensation or other consideration from MWC, Motor Wheel, or any other entity through licensing fees or royalty payments.  (<u>Id.</u>).  Goodyear had no connection with this product and, therefore, no duty to the Plaintiffs.

Further, Goodyear's status as a prior manufacturer and designer of the M-style rims are insufficient to establish any duty on Goodyear to Plaintiffs.[5]  Goodyear sold its stock in its rim

---

[5]The Court notes that the design of the M-style rim is in the public domain.  Goodyear did not obtain any patents on the design of the M-style multi-piece rim components.  (SUMF, ¶11). Notably, because Goodyear did not hold any patents on the M-style rim design, Goodyear did not transfer any intellectual property rights in the design of the M-style rim assembly to MWC or Motor Wheel in conjunction with the sale of Motor Wheel to MWC.  (SUMF, ¶17).

manufacturing subsidiary (Motor Wheel) and the assets of its rim manufacturing business to MWC in 1987.  While Goodyear may have designed the M-style rim prior to 1987, once it sold its assets to Motor Wheel, Goodyear had no control over the design or manufacture of the M-style rims. Felker, 36 F. Supp. 2d at 873-74.  Goodyear cannot be held liable for the design of a product during a time when it had no control over the design, manufacture or sale of the product.[6]  It would not be foreseeable for Goodyear to be liable for products produced five years after it exited the industry and for a product over which it had no control.  Thus, the Court finds that Goodyear owed no duty to Mr. Emmons and his negligence claim against Goodyear fails as a matter of law.

## III.   LOSS OF CONSORTIUM

For a loss of consortium claim, "the defendant must be proved to have caused the original injury, which in turn caused the spouse to suffer."  Crow v. Crawford & Co., 259 S.W.3d 104, 121 (Mo. Ct. App. 2008)(citations omitted).  "Accordingly, one spouse may not receive damages for loss of consortium if the other is not injured." Id.  Having held that summary judgment was appropriate for the various claims that would underlay Ms. Emmons's loss of consortium claim, this Court grants summary judgment in favor of defendant on her loss of consortium claim.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that The Goodyear Tire & Rubber Company's Motion for Summary Judgment [153] is **GRANTED**.

An appropriate Judgment will accompany this Memorandum and Order.

---

[6]Although Plaintiffs contend that the design of the M-style rim did not change significantly between Goodyear's design and the manufacture of the product that injured Mr. Emmons, the Court does not believe that is dispositive of the issue.  Rather, Goodyear's lack of control over the design utilized is the proper inquiry.  Goodyear cannot be held liable for a design for which it had no control.

Dated this 12th day of December, 2012.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE